UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:                                                                  Chapter 11

Port Washington Holding Corp.,                              Case No. 818-72944-845

        Debtor.                                                    <u>Affirmation in Support</u>

------------------------------------------------------------X

        Marc A. Pergament, duly affirms under the penalties of perjury as follows:

        1.      I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a partner in the law firm of Weinberg, Gross & Pergament LLP, attorneys for The Village of Muttontown.

        2.      I submit this Affirmation in support of The Village of Muttontown's ("The Village") request for a hearing on shortened notice for an Order: (a) dismissing the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112; (b) pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and §§ 105 and 1112 of the Bankruptcy Code, awarding attorneys fees and assessing sanctions against the Debtor, the Debtor's sole shareholder and officer and Debtor's counsel for the bad faith bankruptcy filing and material misrepresentations in the petition and schedules and supporting documents; and (c) such other and further relief as this Court deems just and proper

## BACKGROUND

        3.      On June 12, 2007, Plaintiff commenced a lawsuit against Port Washington Holding Corp. ("Port Washington Holding") and Anupam Kumar Sharma ("Sharma") (collectively "Defendants") in the State Supreme Court, Nassau County ("State Court Lawsuit").

4. Port Washington Holding ("Debtor") was the owner of the real property known as 30 Woodhollow Court, Muttontown, New York ("Premises") at the time the State Court Lawsuit was commenced.

5. Sharma has represented that he is residing at the Premises.

6. Thirty Woodhollow Ct. Inc. ("Thirty Woodhollow") is the transferee and current owner of the Premises, and was added as a defendant by Order of the State Supreme Court dated March 27, 2012.

7. Port Washington Holding and Sharma caused 9,750 cubic yards of unauthorized material consisting of rubbish and trash to be dumped on the Premises without a permit in violation of The Village Code, and erected a wall on the northerly side of the Premises having a height in excess of the maximum height permissible under The Village Code, without obtaining a variance from the Zoning Board of Appeals.

8. Despite the passage of more than ten years, five orders of the State Supreme Court, and two contempt orders, many of the Code violations remain, and the Premises continues to be a hazard, dangerous to the neighbors, an eyesore, and a nuisance to the community.

9. The Village brought the State Court Lawsuit to enforce its code through declaratory and injunctive relief, directing the removal of 9,750 cubic yards of the unauthorized fill and the nonconforming wall.

10. In an Order entered on March 12, 2009, the State Supreme Court (Palmieri, J.) granted The Village's motion for summary judgment and directed The Village to submit a judgment on notice providing for a declaratory judgment and a mandatory injunction for removal of the unauthorized fill and the nonconforming wall.

11. In the Order and Judgment entered on May 20, 2009 (the "Summary Judgment"), Justice Palmieri ordered the Debtor and Sharma to remove 9,750 cubic yards of unauthorized material from the Premises, and to remove the nonconforming wall from the northerly side of the Premises. A copy of the Summary Judgment is attached as Exhibit "A."

12. On June 1, 2010 the defendants' appeal from the Summary Judgment was dismissed by the Appellate Division, Second Department, and the Summary Judgment was affirmed. See, Village of Muttontown v. Port Washington Holding Corp., 74 A.D. 3d 793 (June 1, 2010).

13. In an Order dated April 19, 2010 (the "Contempt Order"), the State Supreme Court (Palmieri, J.) found that the Debtor and Sharma failed to obey the Order of the Court, and that their conduct had actually defeated, impaired and prejudiced the rights of The Village; and held the defendants in contempt pursuant to Judiciary Law §770. A copy of the Contempt Order is attached as Exhibit "B."

14. The Contempt Order further provided that the defendants might purge themselves of contempt by providing The Village with proof that the process of actually removing the fill and the retaining wall had begun within 20 days of service upon them of a copy of the Contempt Order as directed by the Court, and that the removal of all fill was completed no later than 60 days from such service.

15. The Contempt Order further provided that upon a failure to purge by the Debtor and Sharma, and upon further application by The Village, the Court may issue a warrant for Sharma's arrest, and to have him brought before the State Supreme Court for further action, including imprisonment.

16. The Contempt Order also provided that, "[s]hould the contemnors not purge the contempt under the terms set forth herein, the Court fines each $50. In addition, upon such failure to purge, *the Court will award reasonable counsel fees against the contemnors upon an affidavit of services made necessary by the contempt, which may include the making of this present motion and any additional services made necessary by the failure to purge under this order.*" (emphasis added).

17. The Defendants failed, neglected and refused to comply with the Contempt Order and did not purge themselves of contempt.

18. On September 6, 2012, as a result of the Defendants' failure to comply with the Contempt Order and purge themselves of contempt, The Village made a motion to again hold Defendants in contempt, to appoint a Receiver of the Premises to carry out the terms of the Judgment, and to enforce the Contempt Order of the State Supreme Court.

19. In an Order dated November 20, 2012 (the "Remediation Order"), the Court directed Defendants, among other things, to submit plans (1) to remediate existing drainage problems, (2) to address landscaping and topography issues, (3) to construct an adequate dry well system and (4) to remove the nonconforming wall. A copy of the Order is attached as Exhibit "C."

20. On May 31, 2013, counsel for all parties appeared for a hearing upon The Village's motion to hold Defendants in contempt, and to appoint a Receiver of the Premises.

21. In a written stipulation "so ordered" by the State Supreme Court on May 31, 2013, the Defendants consented to the appointment of a Receiver of the Premises at Defendants' expense. A copy of the "so ordered" stipulation is attached as Exhibit "D."

22. Pursuant to the "so ordered" stipulation, The Village's demand for an award of attorneys' fees pursuant to the Contempt Order was submitted to the Court for determination.

23. On August 6, 2014, a Judgment was entered awarding attorneys' fees to The Village through May 31, 2013 in the sum of $34,143.75. A copy of the judgment awarding attorneys' fees is attached as Exhibit "E."

24. The August 6, 2014 Judgment awarding attorneys' fees remains unsatisfied.

## THE RECEIVERSHIP

25. In an Order entered on July 2, 2013 (the "Order Appointing Receiver"), the State Supreme Court determined that the appointment of a Receiver was necessary for the protection of The Village, the community and the preservation of the Premises. A copy of the Order Appointing Receiver is attached as Exhibit "F."

26. Pursuant to the Order, William J. Garry, Esq., was appointed Receiver "for the purpose of obtaining possession of said Property and removing the unauthorized fill and the non-conforming wall from the Property and otherwise complying with the Order and Judgment of this Court dated May 15, 2009 and the Orders of this court dated April 19, 2010 and November 20, 2012…" (Exhibit F).

27. The Order Appointing Receiver further provided that "upon application and further order of this Court said Receiver is authorized to advance and expend funds and hire contractors, and other agents, employees or consultants for the account of the defendants, to accomplish the tasks and improvements to the Property set forth above, which shall be paid by

defendants immediately upon presentation of any invoices, bills or other proof of expenditures…" (Exhibit F).

28. The Defendants failed, neglected and refused to cooperate with the Receiver in his efforts to remove the unauthorized fill and the non-conforming wall from the Premises or otherwise comply with the Judgment, the Contempt Order and the Remediation Order (Exhibits A, B and C).

29. The Defendants failed, neglected and refused to remit to the Receiver the funds required to hire contractors, and other agents, employees or consultants to accomplish the tasks and improvements to the Premises and otherwise comply with the several orders of the State Supreme Court.

30. The Defendants failed to cooperate with the Receiver, and, once again, disobeyed the Orders of the State Supreme Court.

### EXTENDING THE RECEIVERSHIP TO THE JUDGMENT AND VACATING FRAUDULENT CONVEYANCES

31. Because of Defendants' continued contempt, The Village moved for an order extending the Receivership to the Judgment of The Village and directing the Receiver to sell the Premises, on the condition that the purchaser agree, as a condition of the sale, to remove the unauthorized fill and the non-conforming wall and otherwise comply with the Order and Judgment of the State Supreme Court entered May 20, 2009 and the Orders of the State Supreme Court dated April 19, 2010 and November 20, 2012.

32. By Order dated December 3, 2015, the State Supreme Court granted The Village's motion in its entirety, and also granted The Village's request for attorneys' fees, to be included in a final judgment. A copy of the State Supreme Court's Order is annexed as Exhibit "G."

33. The Village also moved in a related case entitled, "Village of Muttontown v. Suffolk Real Estate Holding Corp. et al.", Index No. 4215/2015, for an order vacating a mortgage and a confession of judgment that the Defendants had placed on the Premises, as fraudulent conveyances.

34. By an Order dated December 3, 2015 in that related case, the State Supreme Court found that The Village was entitled to that relief, and vacated those conveyances as fraudulent. That Order also granted The Village's request for attorneys' fees, to be included in a final judgment. A copy of the Order in the Suffolk Real Estate Holding Corp. case is attached as Exhibit "H."

35. On April 25, 2017, the State Supreme Court entered an Order directing the sale of the Premises. A copy of the April 25, 2017 Order is annexed hereto as Exhibit "I."

36. On May 17, 2017, the State Supreme Court entered Judgment directing the sale of the Premises. A copy of the Judgment is annexed hereto as Exhibit "J."

37. The Debtor has continued to obfuscate and prevent the sale of the Premises. The Receiver issued a Notice of Sale, which provided for the sale of the Premises on May 1, 2018.

38. Shortly thereafter, the Debtor applied to the Appellate Division of the Supreme Court for a stay and that application was denied.

39. The Debtor also applied to the State Supreme Court for entry of a temporary restraining order and the State Supreme Court refused to enter the order and refused to schedule a hearing on the application and did not grant a temporary restraining order.

40. The Debtor filed its bankruptcy petition on April 30, 2018 as another step in its efforts to refuse to comply with its obligations under several final Orders issued by the State Supreme Court.

41. The Debtor concedes in its petition that its only material creditor is The Village and thus, this bankruptcy filing is effectively the last straw by this Debtor to prevent compliance with Orders of the State Supreme Court.

## JURISDICTION

42. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. The statutory predicates for the relief sought herein is §§ 105 and 1112 of the Bankruptcy Code.

## RELIEF REQUESTED

43. By this application, The Village seeks an order: (a) dismissing the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112; (b) awarding attorneys fees and assessing sanctions against the Debtor, the Debtor's sole shareholder and officer and Debtor's counsel for the bad faith bankruptcy filing and material misrepresentations in the petition and schedules and supporting documents; and (c) such other and further relief as this Court deems just and proper

## ARGUMENT AND AUTHORITY

44. Following the bankruptcy filing, I reviewed a substantial portion of the files from the two (2) State Court Lawsuits and reviewed the issues with The Village's state court counsel and conferred with The Village's representatives.

45. I commenced a further review of the real property records and discovered that the Debtor herein is not and has not been the owner of the Premises since April 2010. A Deed had been recorded in April 2010 whereby the Debtor transferred the Premises to Thirty

Woodhollow for apparently no consideration. A copy of the Deed is annexed hereto as Exhibit "K."

46. I also discovered that the Debtor's counsel herein, Phillips, Artura & Cox, had also been counsel to the Debtor, Thirty Woodhollow and Sharma in the State Court Lawsuit and presumably had full and complete understanding of the history of the litigations and had performed due diligence.

47. I conferred with Debtor's counsel and advised counsel that this Chapter 11 case should never have been filed as the Debtor did not own the Premises and the bankruptcy petition and schedules signed by Sharma and Debtor's counsel was materially inaccurate as to the most important part of this case which is the assets owned by the Debtor.

48. I continued discussions with Debtor's counsel over a few weeks to try to resolve the issues and avoid unnecessary and costly litigation.

49. Debtor's counsel represented to me that he did not believe that there was any error by his firm and that nevertheless, the automatic stay was in full force and effect even though this Debtor had not owned the Premises for the past eight (8) years.

50. Debtor's counsel represented to me that he relied on the representations made to him by Sharma and the real estate tax bill issued by the Town of Oyster Bay. The lack of logic of the Debtor's counsel's position is more than surprising considering his firm had been counsel to the Debtor, Sharma and 30 Woodhollow in the State Court Lawsuits.

51. I suggested the dismissal of this bankruptcy case on consent with a determination that it was a bad faith filing with reimbursement to The Village for its costs and expenses in having to represent The Village in this case, which should never have ever occurred.

52. There can be no dispute that this Debtor had no ability to confirm a Plan of Reorganization as it owns no assets, has no funds and has effectively three (3) creditors, The Village, the New York State Department of Taxation & Finance, which is owed approximately $3,200.00 and T-Mobile, which is owed approximately $200.00.

53. The acts of the Debtor, Sharma and the Debtor's counsel have substantially prejudiced and damaged The Village in numerous respects. The foreclosure sale should have been held on May 1, 2018 and the purchaser would have assumed the obligations to cure all violations and most importantly, the major safety and related concerns that have been in existence with respect to the Premises for many years. The Debtor's counsel conceded at the status conference on June 6, 2018, that the pool is not covered and has not been covered for a substantially long period of time and that there is debris on the Premises and that it is extremely difficult to walk the Premises.

54. Further, an inspection by The Village's representative responsible for Code enforcement, indicated that it was hazardous for anyone to enter the Premises. The Debtor's counsel conceded that his partner visited the Premises with the Village's counsel, Sharma and Mr. Toscano of The Village and that it was a hazard even walking on the Premises for an inspection.

55. The bankruptcy case should be dismissed so The Village can obtain the enforcement of the Orders and Judgments of the State Supreme Court and protect the interest of The Village, the neighbors and the surrounding community.

56. There is overwhelming evidence that this was a bad faith bankruptcy filing by the Debtor as the Court will analyze whether the Debtor, its principal and Debtor's counsel have played by the rules; have met their obligations under the Bankruptcy Code and have acted

in equity when invoking the equitable protections that the Bankruptcy Code provides. *In re Eclair Bakery, Ltd.,* 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000). Here the Debtor owns no property and has no prospect for an effective reorganization.

57. Further, even compounding the conduct of the Debtor, the Debtor, until this day, has not amended its schedules to reflect that it is not the owner of the Premises set forth in Schedule A.

58. The filing of this case violates the most fundamental premise of the Bankruptcy Code and The Village request that § 1112 mandates this Court dismiss the case and find it to be a bad faith bankruptcy filing.

59. This bankruptcy filing and the specific direction by Debtor's counsel to the State Court Receiver to cancel the foreclosure sale is an additional indicia of bad faith by the Debtor, Sharma and Debtor's counsel. While it is true that the filing of the bankruptcy petition on the "eve of foreclosure or eviction" is, alone, not sufficient to constitute bad faith, is one of the many circumstances that can be considered in totality of the circumstances analysis. *Eclair Bakery,* 255 B.R. at 137; (*citing In re 234-6 West 22nd St. Corp.,* 214 B.R. at 757). Thus, "a bankruptcy filing intended in part to gain relief from the State Court Action does not necessarily constitute bad faith," but where the debtor had a single asset, or no going concern, "the bankruptcy filing may have as its only purpose a hope to relitigate a state court action." *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1287 (2d Cir. 1990). *See also In re JER/Jameson Mez Borrower II LLC,* 461 B.R. 293 (Bankr. D. Del 2011) (concluding that a bankruptcy filing on the eve of a foreclosure sale was in bad faith because the debtor had only one asset, no unsecured creditors, no cash or income, no employees or ongoing business operations, and no prospect of

reorganization). Here the Debtor did not even own any property, had no income and no unsecured creditors.

60. As discussed above, this two-party dispute has only one goal - depriving The Village of its right to enforce the Judgments and Orders of the State Supreme Court, including several Contempt Orders. The Debtor sought to avoid the foreclosure on the Premises by filing for Chapter 11 the day prior to the foreclosure sale. The Debtor should not be allowed to use the Bankruptcy Court to further delay enforcement of the State Supreme Court Orders and Judgments.

61. When a single asset debtor files a voluntary Chapter 11 case on the eve of a foreclosure action, a court may dismiss the case under 11 U.S.C. § 1112(b) on a finding of objective futility of any possible reorganization and subjective bad faith. *In re 1020 Warburton Avenue Realty Corp., 127 B.R. 333, 335* (Bankr. S.D.N.Y. 1991). Bankruptcy Code section 112(b) provides, in pertinent part:

> Except as provided in paragraph (2) of this subsection, subsection (c) . . . after notice and a hearing . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

62. Numerous courts have found bad faith where a debtor possessing a single asset has no realistic chance for rehabilitation of any ongoing business and files a bankruptcy petition in the hopes of gaining relief from another action that essentially involves the resolution of a two-party dispute. *See In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1311-12 (2d Cir. 1997)* (affirming the bankruptcy court's dismissal of a petition for bad faith pursuant to 11 U.S.C. § 1112(b)); *See also In re MacInnis,* 235 B.R. 255, 260 (S.D.N.Y. 1998) (holding "cause" existed to lift automatic stay based on debtor's bad faith in filing for Chapter 11 relief and

debtor's bad faith also provided basis for dismissal); *In re Wally Findlay Galleris (New York), Inc.*, 36 B.R. 849, 850 (Bankr. S.D.N.Y. 1984) (dismissing petition filed contemporaneously with the state court entry of "judgments on [certain] ... promissory notes," as "debtor filed ... to avoid the consequences of adverse state court decisions while it continues litigating," and the "debtor is unable to propose a meaningful plan of reorganization until its litigation ... is resolved").

63.  Further, many courts, including the Second Circuit, have identified "badges of bad faith" as grounds to dismiss improperly filed bankruptcy petitions. *See In re Consulting Actuarial Partners,* 72 B.R. 821, 826 (Bankr. S.D.N.Y. 1987); *C-TC 9th Avenue Partnership,* 113 F.3d at 1311; *In re Pleasant Pointe Apartments, 139 B.R. 828, 832 (Bankr. W.D. Ky. 1992); In re Ravick Corp.,* 139 B.R. 828, 842 (D.N.J. 1989). A list of these "badges of bad faith" identified in the cases above are as follows:

1. the debtor has only one asset;

2. the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

3. The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

4. the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

5. the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

6. the debtor has little or no cash flow;

7. the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

8. the debtor has no employees.

*C-TC 9th Ave.* 113 F.3d at 1311. *See also 1020 Warburton Avenue Realty Corp.*, 127 B.R. at 335 (factors include (i) the only significant creditors are those seeking foreclosure; (ii) there are few or no unsecured creditors; (iii) the filing of the case on the eve of a mortgage foreclosure, was not precipitated by creditor pressure other than those creditors seeking foreclosure; (iv) the only employees are those who are in actual control of the debtor; (v) the debtor has little or no cash flow; (vi) the debtor is not engaged in significant business activities; and (vii) there is no realistic possibility of a reorganization and there was evidence of subjective bad faith on the part of the petitioner in filing the Chapter 11 case).

64. A simple and direct application of the *C-TC 9th Ave. P'ship* factors to the facts in this chapter 11 case mandates the immediate dismissal of the petition as a bad faith filing:

1. the Debtor does not own the Premises and has no assets;

2. the Debtor has two unsecured creditors owed less than $3,500.00;

3. the Premises is the subject of a Sale Order;

4. this two-party dispute has already been determined by Order and Judgments of the State Supreme Court;

5. the timing of the Debtor's filing evidences an intent to delay and frustrate the legitimate efforts of The Village to enforce its rights;

6. the Debtor has no cash or cash flow;

7. the Debtor does not have the resources to meet its expenses; and

8. the Debtor has no employees.

65. The Debtor herein displays nearly all of the badges of bad faith and that is compounded by the material misrepresentations by the Debtor, including its false claim that it owns the Premises.

66. This bankruptcy filing had only one goal and that was to continue a ten (10) year plan to obfuscate and delay enforcement of The Village Code and the Orders and Judgments of the State Supreme Court. The Debtor has no chance of confirming any Plan of Reorganization and its bad faith is apparent.

67. The Village requests that this Court grant this application and award The Village its attorneys fees and costs in the sum of at least $30,000.00 against the Debtor, the Debtor's principal, Sharma and Debtor's counsel and assess such other sanctions as appropriate for this bad faith bankruptcy filing.

68. The Village respectfully requests that this Court grant its application to hear this motion on shortened notice to expedite the dismissal of this case so that the State Court Receiver can fulfill his fiduciary duties and sell the Debtor's Premises and minimize future harm to The Village and its neighbors from the unsafe Premises and such other and further relief as the Court deems just and necessary.

Dated: Garden City, New York
June 7, 2018

_____
Marc A. Pergament