UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In Re:

Port Washington Holding Corp.,

        Debtor.

-----------------------------------------------------------X

RETURN DATE:   JUNE 20, 2018
TIME:   11:30 A.M.

Chapter 11

Case No. 818-72944-845

Reply Affirmation

Marc A. Pergament, duly affirms under the penalties of perjury as follows:

1. I am an attorney admitted to practice law before the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a partner in the law firm of Weinberg, Gross & Pergament LLP, attorneys for The Village.[1]

2. I submit this Reply Affirmation in further support of The Village's request for a hearing on shortened notice for an Order: (a) dismissing the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112; (b) pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and §§ 105 and 1112 of the Bankruptcy Code, awarding attorney's fees and assessing sanctions against the Debtor, the Debtor's sole shareholder and officer and Debtor's counsel for the bad faith bankruptcy filing and material misrepresentations in the petition and schedules and supporting documents; and (c) such other and further relief as this Court deems just and proper.

3. The Debtor and its counsel join in The Village's request that the bankruptcy case be dismissed. This is not surprising because neither the Debtor nor its counsel should have filed the Petition.

---

[1] Unless defined herein, capitalized terms are defined in the Affirmation of Marc A. Pergament, dated June 7, 2018 ("Pergament Aff." or "Pergament Affirmation").

4. The remaining portion of The Village's motion asks this Court to impose sanctions and award attorney's fees in favor of The Village as a result of the bad faith filing.

5. The Debtor disagrees that The Village's contention that the case was filed in bad faith as the Debtor believes that it and its counsel performed a sufficient amount of investigation about its ownership of the Premises prior to filing the voluntary petition. To support this position, the Debtor offers the following:

    a. This was an emergency filing necessitated by a Receiver's sale scheduled for the following morning, May 1, 2018. (Artura Aff.[2], ¶ 6.)

    b. Unfortunately this client, like many clients facing loss of their home, waited until the eve of sale to confer with bankruptcy counsel. (Artura Aff., ¶ 7.)

    c. At the time of our meeting it was too late to run a title report and counsel was constrained to use available information. (Artura Aff., ¶ 8.)

6. None of the foregoing excuses the improper filing by the Debtor nor consistent with the facts.

7. The potential for the Premises being sold by the Receiver was something that took years to reach fruition. In fact, it was agreed to by the Debtor and non-Debtor Thirty Woodhollow Ct. Inc. in 2013. (*See* Ex. F to the Pergament Affirmation.) Nevertheless, while counsel may have clients who wait until the eve of an impending sale to confer with counsel, the Debtor, and its principal, who is purportedly a sophisticated businessman, had ample opportunity to confer with bankruptcy counsel and should not be rewarded for their *laissez-faire* attitude. The Debtor's counsel was also counsel in the State Court litigation and had knowledge of the scheduled sale when the notice was issued. Thus, the excuses are inapposite.

---

[2] References to "Artura Aff." are to the Affirmation of Richard F. Artura, Esq., dated June 15, 2018.

8. Further, the Debtor should have known, without reviewing any documents, that it was not the owner of the Premises. Indeed, the Debtor, by Sharma Anupam, signed a deed on or about April 26, 2010, which was recorded by the Nassau County Clerk on April 27, 2010, under which the Debtor transferred the Property to Thirty Woodhollow Ct. Inc. (Annexed hereto as Exhibit "L" is a copy of the deed.)

9. Debtor's counsel's contention that it did not have time to run a title report, presumably to confirm the owner of the Premises, is a red herring.

10. The Nassau County Clerk maintains a website that contains, among other things, all deeds and mortgages recorded since at least 1999. Access to the website is available to the public at no charge for viewing. The website address is https://i2f.uslandrecords.com/NY/Nassau/D/Default.aspx.

11. A simple, non-time consuming, search by counsel would have revealed that Thirty Woodhollow Ct. Inc., not the Debtor, owned the Premises.

12. The deed reflecting the ownership of the Premises can be found at https://i2f.uslandrecords.com/NY/Nassau/D/ImageViewerEx.aspx. It is from this website that I obtained a copy of the deed annexed hereto as Exhibit L.

13. The foregoing undermines the Debtor's and its counsel's statement that they were "constrained to use available information." They neglected to review the available information, which the Debtor acknowledged in its opposition was mandatory. *See* Artura Aff., ¶ 10 [. . . . "'While the investigation performed by a signatory need not be to the point of certainty to be reasonable,' a "signer must explore readily available avenues of factual inquiry." *In re Parikh*, 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014). (citations omitted)'"]

14. The Debtor asserts that the portion of the Village's Motion seeking sanctions under Rule 9011 is procedurally defective. (*See* Artura Aff., n. 2.) The Village disagrees.

15. As noted by the court in *In re Dickson*, 2017 Bankr LEXIS 4030, at *9-10 (Bankr.E.D.Kentucky Nov. 22, 2017):

> Bankruptcy Rule 9011 generally provides a safe harbor period to allow a party to correct challenged behavior, but the safe harbor does not apply when "the conduct alleged is the filing of a petition in violation of subdivision (b)." Fed. R. Bankr. P. 9011(c)(1)(A). "This is because the filing of a petition has immediate serious consequences, among which is the imposition of the automatic stay of section 362 to the Code." 10 Collier on Bankruptcy ¶ 9011.05[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) (citation omitted). [*10] Here, the safe harbor does not apply because Creditors claim that the filing of Debtor's petition itself is the violation.

See *Levey v Kesser Cleaners Corp.*, 2007 US Dist. LEXIS 54738, at *9 (EDNY July 27, 2007)

> Bankruptcy Rule 9011(c)(1)(A) treats petitions differently because petitions, unlike papers, claims, defenses, contentions, allegations, or denials, cause immediate collateral effects and, moreover, a petition cannot be withdrawn without the court's consent. See <u>In re St. Stephen's 350 East 116th St.</u>, 313 B.R. 161, 168 n. 5 (Bankr.S.D.N.Y. 2004) (stating that the safe harbor provision does not apply to the filing of petitions since "the filing [of a bankruptcy petition] has immediate, serious consequences and there is no absolute right to withdraw a chapter 7 or chapter 11 petition"). Thus, requiring a higher degree of *mens rea* for a Bankruptcy Rule 9011 violation would defeat the very intent of exempting petitions from the safe harbor provision.

16. Here, the safe harbor provision is not applicable because The Village contends that the bankruptcy case should never have been filed.

17. The Debtor disagrees with The Village's position that advising the State Court Receiver to cancel the sale of a non-debtor's building was bad faith. (Artura Aff., ¶ 12.)

18. In a conclusory manner, the Debtor states that "under 11 U.S.C. §362(a) there would have been a stay in effect no matter which corporation filed as PW [Debtor] was

4

also a listed defendant in the State Court action and a judgment debtor." (*Id.*) The lack of explanation to support this statement is telling.

19. Further, the Debtor's position that there was "no harm no foul" because judgments at issue were against, among others, the Debtor and the non-Debtor Thirty Woodhollow Ct. Inc., is baseless.

20. Moreover, Debtor's argument disregards that the consent Order Appointing Receiver (Ex. F) sought among other things, to "obtain possession of the said Property . . . ." (*Id.*, p.2.)

21. One of the reasons that the Receiver was appointed was because Thirty Woodhollow Ct. Inc., the Debtor and its principal, failed to maintain the house and the surrounding grounds in accordance with The Village's Code. One of the Receiver's obligations under the Order Appointing Receiver (Ex. F) was to enforce the Village's police powers,[3] which would not be stayed under 11 U.S.C. § 362(a). Thus, counsel's directive to the Receiver was improper.[4]

22. The Debtor also disagrees with the Village's argument that the Debtor "had no prospect of reorganization." (Artura Aff., ¶ 13.)

23. To support its disagreement, the Debtor states that it "had every intention of proposing a liquidating plan where it would sell the home in a non-voting plan and pay all

---

[3]The Order Appointing Receiver, provides, in part, "And it appearing to the satisfaction of the Court that this action is brought to remedy various violations of the Village Code of the Village of Muttontown, and that it is necessary for the protection of the Plaintiff, the community and preservation of the Proceeding that the unauthorized fill and a non-conforming wall be removed from the Property in a manner consistent with the prior Orders of this Court, which would otherwise be impossible with possession being obtained for that purpose by a Receiver, . . ."

[4]The Village contends that a court order is not required to enforce its police powers, which actions would otherwise be excepted from the automatic stay under 11 U.S.C. § 362(a). This is particularly so here where the Debtor had caused additional violations of the Village Code following entry of the Order Appointing Receiver.

creditors in full." (*Id.*) This argument begs the question, how could the Debtor sell real property that it does not own?

24. The Debtor cites to various authorities to undermine The Village's allegations of bad faith (*see* Artura Aff., ¶ 14), while also attempting to dispel the notion that it acted in bad faith because the Debtor "could have potentially put forward a liquidating plan . . . ." (Artura Aff., ¶ 15.)

25. The foregoing disregards that the Debtor does not own the Premises. The Village is unaware of any assets of the Debtor that could have been used to fund or be liquidated under a liquidating plan of reorganization.

26. The Debtor also notes the certain settlement "proposals [were exchanged] between the parties before settlement negotiations broke down." (Artura Aff., ¶ 15.) Assuming, but not conceding the truth of such statement, such exchange did not and does not excuse the bad faith filing. The Debtor's counsel also forgets that after he agreed to the Stipulation of Dismissal as revised by him, that the Debtor refused to sign it and demanded material new changes.

27. The Debtor attempts to shift blame to The Village for the Debtor's improper filing. In that regard, counsel states that "[t]he filing of PW [Debtor] instead of Thirty Woodhollow Court Inc. was a good faith error primarily of the debtor and its counsel, but as shown above [T]he Village and the Town of Oyster Bay surely contributed to the uncertainty of counsel in determining the deeded owner." (Artura Aff., ¶ 16.) This is nonsense.

28. To the extent that The Village was not aware of the true owner of the Premises, that was solely due to the surreptitious actions of the Debtor and Thirty Woodhollow Ct. Inc. There is no reason for the Debtor to not know the true owner of the Premises.

29. Further, counsel's admission that the transfer from the Debtor to Thirty Woodhollow Ct, Inc. was likely a fraudulent conveyance (*see* Artura Aff., ¶ 17 ["The deed from Port Washington Holding Corp. to Thirty Woodhollow Ct, Inc. was for no consideration and

made while movant's Notice of Pendency was in effect resulting in title exceptions), should not excuse the Debtor's bad faith filing.

30. Since the Debtor's case was filed in bad faith, sanctions under Rule 9011 and 11 U.S.C. § 105 should be imposed against the Debtor and its counsel and The Village should be reimbursed the legal fees incurred in connection with the Debtor's case.

WHEREFORE, it is respectfully requested that this Honorable Court issue an Order: (a) dismissing the Debtor's Chapter 11 case pursuant to 11 U.S.C. § 1112; (b) pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure and §§ 105 and 1112 of the Bankruptcy Code, awarding attorney's fees and assessing sanctions against the Debtor, the Debtor's sole shareholder and officer and Debtor's counsel for the bad faith bankruptcy filing and material misrepresentations in the petition and schedules and supporting documents; and (c) such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       June 19, 2018

_____
Marc A. Pergament